Oscar Haugan, etc. v. John Michalopoulos et al. Steve Kachantones, Appellee, v. John Michalopoulos et al., Defendants. John Michalopoulos, Appellant.

Gen. No. 38,034.

240

Heard in the first division of this court for the first district at the February term, 1935. Opinion filed May 6, 1935.

JAMES PERCIVAL PIO, of Chicago, for appellant.

FOREMAN, BLUFORD, KRINSLEY & SCHULTZ and A. EDMUND PETERSON, all of Chicago, for Chicago Title & Trust Co.; MILTON J. FOREMAN, VICTOR HEDBERG and DAVID C. KENYON, all of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Haugan, trustee named in a deed executed March 17, 1926, by John Michalopoulos, conveying real estate in

Cook county to secure bonds of the principal amount of $300,000, filed his bill to foreclose said trust deed on November 23, 1932, alleging defaults in the payment of principal, interest, taxes and assessments. On November 8, 1933, the court after hearing motion for the appointment of a receiver, found the premises to be scant security for the indebtedness, and in lieu of such appointment directed that Michalopoulos be permitted to remain in possession upon executing a bond that he would faithfully account for rents, issues and profits. Individual holders of the bonds were not made party defendants to the proceedings, further than they were represented by Haugan as trustee in the filing of the bill.

July 13, 1934, Steve Kachantones filed a petition in the cause in which he averred that he was the owner of $173,000 worth of bonds; that Haugan as trustee had resigned as under the provisions of the trust deed he might do; that the State Bank of Chicago, a successor in trust, had theretofore been consolidated with the Foreman Trust & Savings Bank; that Charles H. Albers had been appointed receiver of the consolidated bank which was in the process of liquidation; that Albers, in behalf of the bank, had also resigned as successor trustee. His petition prayed that summons and process issue against the ''unknown owners'' of the bonds; that they be given opportunity to be heard, and that upon hearing a successor trustee should be appointed as provided by the terms of the trust deed. The petition was verified. The petitioner also filed an affidavit of nonresidence to the effect that the unknown owners on due inquiry could not be found, so that process could not be served upon them or either or any of them, and that upon due and diligent inquiry their present place of residence could not be ascertained and that their last place of residence was unknown.

Albers, in a petition for leave to appear, set up that he was the owner of $8,000 principal amount of the bonds. By order he was allowed to appear and his petition to stand as an answer.

Marie Eisner, holder, as she averred, of $2,500 of bonds, appeared and by leave filed an answer. The Meyercord Co. by leave appeared and filed an answer averring that it was the owner of bonds to the amount of $25,000.

November 22, 1934, defendant Michalopoulos filed a general and special demurrer. The cause was set down for hearing, upon which the court on motion of solicitors for petitioners Marie Eisner and the Meyercord Co., ordered that the Chicago Title & Trust Co. be appointed successor trustee and vested with all the rights, powers and duties provided in the trust deed sought to be foreclosed, and that the Chicago Title & Trust Co. be substituted as complainant to succeed to the rights, powers and duties of Haugan. December 19, 1934, the cause again came on for hearing on the demurrer of Michalopoulos, and the court entered an order that the appointment of a successor trustee should be adjudged and was considered by the court as an overruling of the demurrer. The order was entered on that date *nunc pro tunc* as of November 22, 1934, and from these orders this appeal has been perfected by defendant Michalopoulos.

The record fails to disclose that as a matter of fact any summons issued against the unknown owners who were made parties defendant to the petition, and defendant contends that under section 7 of the Chancery Act, Cahill's St. ch. 22, ¶ 7 (Smith-Hurd's Ill. Rev. Stats., 1933, ch. 22, sec. 7, p. 251) the court could not acquire jurisdiction over the unknown owners unless such summons issued. Defendant quotes from Puterbaugh's Chancery Pleading & Practice, vol. 1, ch. 5, sec. 85, p. 139, as follows:

"In order to acquire jurisdiction over 'Unknown Owners' or 'Unknown heirs or devisees,' under section 7, it is absolutely essential that they be made defendants by proper designation in the bill, and that the summons, affidavits and publication notice conform to the allegations of such bill, consequently the allegations of the bill, the affidavits and publication notice should be carefully prepared so as to exactly comply with the statute." Defendant contends that this provision for the issue of summons is jurisdictional, and that if the present order of the court stands without compliance therewith, no title would ever be had of any sale conducted by the new trustee, because any bondholder who could bring himself within the class of unknown owners could at any time come in and move to set aside the order appointing a trustee upon the ground that no summons had ever been issued against him. Defendant says that such owner would be entitled to have the proceedings vacated. Puterbaugh makes the statement above quoted without the citation of authority, and petitioner contends that the case of *Alexander Lumber Co. v. Kellerman,* 358 Ill. 207, is to the contrary. In that case it appeared that the summons for unknown owners was issued prior to the filing of the affidavit, and it was contended that service thereafter had by publication was void for that reason. The opinion of the Supreme Court said that *Wenner v. Thornton,* 98 Ill. 156, was relied upon to support the contention but did not sustain it, and further:

"It does not hold that it is necessary to issue a summons against unknown parties, nor does section 7 of the Chancery Act make any such requirement. After providing for the filing of an affidavit as to unknown parties, section 7 provides: 'And process shall be issued against all such parties by the name and description given as aforesaid; and notices given by

publication, as is required in this act.' Any means of acquiring jurisdiction is properly denominated process. (21 R. C. L. 1262.) Jurisdiction of a party may be acquired by personal service of summons or by constructive service. Constructive or substituted service may be made by filing the necessary affidavits and publication as to unknown parties. Such constructive service constitutes process as much as the service of a summons. We cannot conceive how an officer can personally serve a summons upon unknown parties, and the fact that one was issued against unknown owners before the affidavit was filed is immaterial.'' Irrespective of this authority, however, we hold that defendant Michalopoulos is not in a position to raise this question. He is not an unknown owner; he does not appear as of that class. His appearance is in the case. There has been no attempt made to serve him by publication. He is named defendant as the maker of the trust deed and the party who executed the bonds. He is not in a position to object that process has not been served upon codefendants who belong to a different class. *Fergus v. Tinkham,* 38 Ill. 407; *Donham v. Joyce,* 257 Ill. 112; *St. George v. Bender,* 342 Ill. 296.

In Dodd and Edmunds' Appellate Jurisdiction & Practice, in the Courts of Illinois, sec. 963, p. 708, the authors state the rule as follows:

''Errors may be assigned only by a party against whom they are committed or who is affected thereby. Thus a party who was not served and who is not named in the decree cannot assign errors.'' On page 712, section 969, the same authors state:

''As a further corollary to the principle that parties can assign errors or cross-errors only upon questions which affect them directly, it follows that alleged error affecting only parties who have not joined in review cannot be taken advantage of by those who are in the reviewing court. Errors on behalf of or relating to

such absent parties cannot be assigned unless they affect those who are parties to the review. And matters as to such absent parties are obviously concluded.'' The Illinois cases which sustain this rule are too numerous to be either cited or reviewed.

There is a further reason why this contention cannot be sustained, and that is that it was not raised in any way in the trial court. Michalopoulos did not at any time complain to that court that summons did not issue against his codefendants, the unknown owners. He complains of that omission for the first time in this court. This court exists for the purpose of reviewing rulings of the trial court and not for the purpose of passing upon questions not raised there. In Dodd and Edmunds' Appellate Jurisdiction & Practice in the Courts of Illinois, sec. 771, p. 518, the rule applicable is stated:

''The general rule is that courts of review will not consider questions which have not first been raised in the court below. The Appellate Court reviews the judgment of the trial court upon the record alone. The Supreme Court reviews the judgment of the Appellate Court in the same way. If the case is one which goes direct from the trial court to the Supreme Court the trial court record is the only basis for consideration. The question in each case is whether the court whose judgment is under review committed reversible error, and, generally speaking, the only complaint that can be made is one resting upon such rulings of the court below as were properly objected to.'' The same authors in section 776, page 521, point out that this general rule is applicable to such situations and questions as defects in process and service. The first contention of defendant therefore cannot be sustained.

In the second place, defendant argues that the appointment of a new trustee was unnecessary because nothing remained except to enter a decree of fore-

closure, and defendant cites to this point *Lill v. Neafie,* 31 Ill. 101; *Waughop v. Bartlett,* 165 Ill. 124, and *Morse v. Holland Trust Co.,* 184 Ill. 255. The circumstances in each of the cases cited differ widely from those which appear here. The trust deed in this case vests exclusive right of action in the trustee. It appears that the bonds issued were sold to the general public and are to a great extent held by unknown parties. The trust deed gives to the trustee upon default the right to enter and take possession of the mortgaged property and to manage and operate it. It provides that the proceeds of any sale shall be paid to the trustee and distributed by him. It also contains the provision that upon sale, unless someone else bids the full amount of the indebtedness, the trustee may bid and purchase the mortgaged property either for the full amount of the indebtedness or for any less amount and demand, receive and hold in his own name, as trustee, the certificate issued pursuant to the decretal order or judgment directing the sale, and thereafter in the event of no redemption, he may take title to the property for the equal *pro rata* benefit of the holders of the bonds and coupons.

We have recently held that the duties of the trustee under such trust deed and under such circumstances are active in their nature and that under such circumstances the trust becomes active. *Straus v. Chicago Title & Trust Co.,* 273 Ill. App. 63; *Chicago Title & Trust Co. v. Bamburg,* 278 Ill. App. 1; *Chicago Title & Trust Co. v. Robin,* 278 Ill. App. 20; *Grant v. West End Pine Bldg. Corp.,* 279 Ill. App. 190. We hold the court did not err in appointing a successor trustee.

Defendant in the third place urges the point that the insolvency of the trustee does not *ipso facto* remove him as trustee, and that a resignation in accordance with the trust deed is necessary. To this point defendant cites *Dillon v. Elmore,* 276 Ill. App. 548. The point

refers to the qualifications of the Foreman-State Trust & Savings Bank but disregards the controlling fact made to appear by the record that its resignation was tendered.

The appeal is without merit. Haugan, as the original trustee, who filed the bill, represented all the bondholders and continued to represent them until the order of court was entered appointing his successor. It was therefore unnecessary, we think, to make unknown owners parties or to summon them at all. The facts disclosed indicate that the appointment of a trustee was necessary if the interests of the holders of the bonds were to be safeguarded. The original trustee, as well as the successor in trust, having both resigned, the order appealed from was properly entered, and it is affirmed.

*Affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.